**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KENDALL ROSSI**, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF TRENTON**, *et al.*, <br><br> Defendants. | Civil Action No. 18-12708 (ZNQ) (LHG) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion for Summary Judgment ("the Motion") filed by Defendants City of Trenton ("Defendant City"), The Trenton Police Department ("Defendant Police Department"), Ernest Parrey, Jr. ("Defendant Parrey Jr."), Detective Jorge Mejia ("Defendant Mejia"), Detective Jonathan P. Cincilla ("Defendant Cincilla"), and Detective Jeffrey Donaire ("Defendant Donaire") (collectively, "Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure  (ECF No. 42).  Defendants filed a Brief in Support of their Motion ("Moving Br.", ECF No. 42-1) and a Statement of Material Fact ("Def's SMF", ECF No. 42-1).  Plaintiff Kendall Rossi ("Plaintiff") filed a Brief in Opposition to the Defendants' Motion ("Opp'n Br.", ECF No. 52-1) along with a Responsive Statement to Defendants' Statement of Material Fact ("Plf's  SMFID").  Defendants replied.  ("Reply Br.", ECF No. 53.)

  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the

1

reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendants' Motion for Summary Judgment.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

   A.     **UNDISPUTED MATERIAL FACTS**

The Court finds the following facts undisputed:

On February 27, 2017, Defendants Cincilla, Donaire, and Mejia were patrolling the area of Grand Street and Liberty Street at approximately 12:10 a.m. (Def's SMF ¶ 1.) This area was known for distribution of narcotics. (*Id.* ¶ 2.)

Defendant Mejia observed a white male, later identified as Joshua Carr ("Mr. Carr"), and a black male, later identified as Plaintiff Kendall Rossi ("Plaintiff"), in front of 147 Liberty St. (*Id.* ¶ 4.) Defendant Mejia believed he witnessed an illegal drug transaction take place between Mr. Carr and Plaintiff. (*Id.* ¶ 6.) As a result, Defendant Cincilla accelerated their unmarked vehicle and stopped in front of Plaintiff and Mr. Carr. (*Id.*) Both individuals were placed under arrest and transported to headquarters in separate vehicles. (*Id.* ¶¶ 10, 11.)

At the police station Defendant Donaire asked Plaintiff to remove his belongings and jacket from his person. (*Id.* ¶¶ 15, 34.) Plaintiff refused to comply. (*Id.*) Defendant Cincilla un-cuffed Plaintiff to remove property off Plaintiff's person. (*Id.* ¶ 37.) Plaintiff then started to walk away from Defendant Cincilla. (*Id.*)

Defendant Cincilla then observed Plaintiff attempting to free his arms. (*Id.* ¶ 38.) Defendant Cincilla then grabbed Plaintiff's arm to attempt to restrain him. (Id.) When Plaintiff began to walk further away from the detective, Defendant Cincilla grabbed onto him to try and stop him from going any further. (*Id.*) Plaintiff, with Defendant Cincilla latched onto him, then turned, went forward and they both fell to the floor. (*Id.*)

**B.     PROCEDURAL HISTORY**

On August 13, 2018, Plaintiff filed a Complaint alleging the following: Failure to Implement Policies to Avoid Constitutional Deprivations Under Color of State Law in Violation of the Federal Civil Rights Act (42 U.S.C. § 1983) (Count One); Constitutional Violations Caused by Inadequate Policies, Procedures and Customs – Municipal Liability (Count Two); Constitutional Depravations caused by Inadequate Training and Supervision – Liability under *Monell* (Count Three); Deprivation of Substantive Due Process Rights, Immunities, or Privileges under the New Jersey Constitution – Violation of New Jersey Civil Rights Act (N.J.S.A. 10:6-2) (Count Four); and Punitive Damages (Count Five).  (*See* Compl., ECF No. 1.)

On January 4, 2023, the Court ordered Defendants to furnish a copy of the video recording concerning the incident in question.  (ECF No. 54.)  On January 13, 2023, Defendants provided to the Court a copy of the video.  (ECF No. 55.)

**C.     JURISDICTION**

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because the civil action arises under the laws of the United States.  The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

**II.     LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F. 2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id*. (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone. . .cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case,. . . there can be no genuine issue of material fact.'" *Id*. (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F. 2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F. 3d 1125, 1127 (3d Cir. 1995)).

III.   **DISCUSSION**

    A.   **CLAIMS AGAINST TRENTON POLICE DEPARTMENT**

Plaintiff names both the City of Trenton ("Defendant City") and the Trenton Police Department ("Defendant Police Department") in Counts One and Four of the Complaint. (*See generally*, Compl.) In New Jersey a municipal police department is not an entity separate from the municipality. *See* N.J. Stat. Ann. § 40A: 14-118 (municipal police department is "an executive and enforcement function of municipal government.") Therefore, the Trenton Police Department is not a proper defendant in this action. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997); *Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (". . . police departments cannot be sued in conjunction with municipalities, because the police department is

4

merely an administrative arm of the local municipality and is not a separate judicial entity.") Accordingly, the Trenton Police Department is entitled to judgment as a matter of law and all claims against it will be dismissed.

  **B.  WHETHER DEFENDANTS ARE ENTITLED TO ASSERT THE DEFENSE OF QUALIFIED IMMUNITY (COUNT 1)**

Defendants seek summary judgment of Plaintiff's 42 U.S.C. § 1983 claim based on the defense of qualified immunity. (See Moving Br. at 10[1].) Defendants contend that there is no evidence that the officer used any force other than what was necessary to handcuff a person who was resisting arrest and physically threatening the officer. (*Id*. at 13.) In opposition, Plaintiff argues that he has produced ample evidence that the force used was not "reasonable." (Opp'n Br. at 4.[2]) Plaintiff asserts that he suffered a "violent ordeal," resulting in severe injuries. (*Id*.) Therefore, Plaintiff asserts that Defendants are not entitled to the defense of qualified immunity. (*Id*.)

In reply, Defendants reiterate that they are entitled to qualified immunity because Plaintiff resisted arrest and the officers' use of force was reasonable and appropriate. (Reply Br. at 4.[3]) Defendants assert that the video recording wholly contradicts Plaintiff's contentions of the incident and demonstrates that Plaintiff disregarded the officers' commands and resisted arrest. (*Id*.) Defendants argue the Court should view facts in the light depicted by the videotape and grant summary judgment on behalf of Defendants, citing to *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

---

[1] Defendants' Moving Brief lacks page numbers and improperly numbers four pages as page fourteen. Accordingly, the Court will reference the ECF assigned page numbers.
[2] Plaintiff's Opposition Brief lacks page numbers. Accordingly, the Court will reference the ECF assigned page numbers.
[3] Defendant's Reply Brief lacks page numbers. Accordingly, the Court will reference the ECF assigned page numbers.

5

Generally, qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  It is an "entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

To overcome qualified immunity, a plaintiff must plead facts sufficient to show that: (1) the official violated a statutory or constitutional right; and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted); *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168–69 (3d Cir. 2016) (citation omitted).  A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted).  The Court has discretion to approach these steps in the sequential order that it deems "most appropriate for the particular case before [it]." *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015) (citing *Pearson*, 555 U.S. at 236).  Finally, the burden of proving the affirmative defense of qualified immunity rests on the party seeking to invoke it. *See Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006) (citation omitted); *Hicks v. Feeney,* 850 F.2d 152, 159 (3d Cir. 1988) (citation omitted).

There is no doubt that the right to be free of excessive force is a clearly established right under the Fourth Amendment to the U.S. Constitution. *See Graham v. Connor*, 490 U.S. 386, 399 (1989) (The Fourth Amendment's prohibition against unreasonable seizures of the person is a primary source of constitutional protection against physically abusive governmental conduct.)  At issue here, therefore, is whether the facts of this case, taken in the light most favorable to the

Plaintiff, show that Defendants Mejia, Cincilla, and Donaire *violated* a specific constitutional right belonging to Plaintiff.  *Santini*, 795 F. 3d at 417.

The Supreme Court has held that all claims alleging excessive force in the context of an arrest, investigatory stop, or seizure must be "analyzed under the Fourth Amendment and its 'reasonableness' standard."  U.S. Const. Amend. IV; *Graham*, 490 U.S. at 395; *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).  "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances."  *Lamont v. New Jersey*, 637 F.3d 177, 182–83 (3d Cir. 2011) (citations omitted).  Here, there is no dispute that a seizure occurred when the officers detained Plaintiff at police headquarters.  Thus, the pivotal question for the Court is whether, in light of the circumstances, the detectives employed an unreasonable amount of force to effectuate Plaintiff's arrest during the booking process.  *Santini*, 795 F. 3d at 417; *Graham*, 490 U.S. at 399.

To determine reasonableness in excessive force cases, courts within the Third Circuit ask, "whether under the totality of the circumstances, 'the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.'"  *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397); *see also Santini*, 795 F.3d at 417 ("[W]e employ a 'totality of the circumstances' approach for evaluating objective reasonableness."  (*citing Curley*, 499 F.3d at 207)).  This assessment requires courts to balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted).  While the objective reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case," the Supreme Court has provided three general factors to guide the Court's inquiry: (1) "the severity of the crime at issue"; (2) "whether the suspect poses

7

an immediate threat to the safety of the officers or others"; and (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8–9); *Santini*, 795 F.3d at 417.

The objective reasonableness of a particular use of force is evaluated from "the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Santini*, 795 F.3d at 417 (citation omitted). Thus, within the context of an excessive force claim, the "standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F. 2d 1028, 1033 (2d Cir. 1973)). Rather, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Accordingly, to determine whether the detective's use of force was unreasonable, this Court must "slosh [its] way through the factbound morass of 'reasonableness.'" *Scott*, 550 U.S. at 383.

Here, Plaintiff claims that Detectives Cincilla, Donaire and Mejia forcefully drove his face and body onto a concrete floor and Detective Mejia struck Plaintiff in the back of the head-neck area with his right hand. (Plf's SMFID ¶¶ 13, 15.) Plaintiff cites to the transcript of his deposition, where he testifies that the officer "hit [him], swung and hit [him] in the face." (Plf's Dep. 25:7–8, ECF No. 52-3.) Plaintiff also states that when the police officer hit him, "it all was one motion. Two cops holding [his] arms, one cop punches [him], [he] spun around." (*Id*. at 25:25–26:2.) Plaintiff additionally cites to his expert's report, whereby his expert concludes that "Trenton Police Department Detectives Donaire, Cincilla, and Mejia utilized an excessive amount of force,

8

interacting with the Plaintiff. . .while under their care and custody at the Trenton Police Department Headquarters." (Plf's SMID ¶ 26.)

Defendants argue, however, that the videotaped footage of the incident wholly contradicts Plaintiff's version of events. (Reply Br. at 3.) Defendants assert that the video does not show any officer punch him in the face. (*Id*.) Rather, Defendants maintain that the video shows the Plaintiff, while on the floor, continuing to resist while the Officers attempted to handcuff him. (*Id*.)

The Court, however, should view "the facts in the light depicted by the videotape." *Scott,* 550 U.S. at 380–81.[4] The Court thoroughly reviewed the low-quality video recording provided by Defendants that depicts the entirety of the incident. (*See* ECF No. 55.) The video recording, however, does not "wholly contradict Plaintiff's version of events" as Defendants suggest. (*See* Reply Br. at 3.) The video, in low-quality resolution, does show Plaintiff being removed from the bench, attempting to pull away from the Officer's control, spinning around and falling on the floor towards the corner of the room. The video, however, is unclear as to Plaintiff's allegations that officers punched him in the face while he was laying on the floor. (*See* Plf's Dep. 25:7–8.) In fact, the video demonstrates three police officers simultaneously fall to the ground on top of Plaintiff. For over twenty seconds, the three officers remained on the floor, on top of Plaintiff, and appear to be struggling with Plaintiff.[5] Due to the video's poor-quality resolution, the Court is unable to determine whether officers did in fact punch Plaintiff in the face or used any other form of excessive force while lying on the floor.

---

[4] The Supreme Court has reasoned that the existence of a videotape recording presents an "added wrinkle" to the general standard requiring the court to construe facts in the light most favorable to the non-moving party. *Scott,* 550 U.S. at 378. In that regard, "[w]here there is a video recording of the relevant events, the Court views the facts as depicted in the recording, rather than in the non-movant's favor, whenever the recording 'blatantly contradict[s]' the non-movant's version such that 'no reasonable jury could believe it.'" *Knight v. Walton*, 660 F. Appx. 110, 112 (3d Cir. 2016) (alteration original) (quoting *Scott,* 550 U.S. at 380–81).

[5] Roughly ten seconds after Plaintiff and the three officers fell to the ground, a fourth officer attempted to help the other three effectuate control over the Plaintiff. It is clear in the video that the *fourth* officer, however, did not punch Plaintiff in the face as he attempted to control Plaintiff's legs and feet.

9

Accordingly, a genuine issue of material fact remains as to whether Defendants employed an unreasonable amount of force, or, violated a statutory or constitutional right. *See Paige v. City of New Brunswick*, 680 F. Appx. 107, 112 (3d Cir. 2017). Summary judgment based on qualified immunity is therefore inappropriate.

C. **WHETHER DEFENDANT CITY OF TRENTON IS LIABLE UNDER MUNICIPAL/*MONELL* LIABILITY (COUNTS TWO AND THREE)**

Counts Two and Three of the Complaint allege municipal and *Monell* liability against Defendant City under the theories of inadequate policies, procedures, and customs and inadequate training. (Compl. ¶¶ 44–58.)

Defendant City moves for summary judgment on Counts Two and Three on the grounds that Plaintiff has not submitted any evidence for which a reasonable fact finder could find Defendant City liable under the doctrine of municipal liability. (Moving Br. at 17–18.) In opposition, Plaintiff argues that because the police officers involved in this case were not disciplined for this incident, it is the custom of Defendant City to "condone violent assaults of free citizens under their control." (Opp'n Br. at 8–9.) In reply, Defendant City reiterates that Plaintiff failed to establish a failure in policies in practices nor inadequate police training to serve as a basis of liability. (Reply Br. at 5.) The Court finds for the following reasons that Plaintiff has failed to present sufficient evidence to raise a genuine dispute regarding municipal liability and will grant summary judgment as to count two in favor of Defendant City.

The Supreme Court of the United States addressed the issue of municipal liability in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Under *Monell*, municipalities are considered persons subject to liability under Section 1983 for violations of civil rights caused by municipal officials. *See id*. at 690, n. 4. However, a municipality cannot be

10

considered liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory. *Id*. at 694. Thus, under *Monell*,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employee or agents. Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. The Court further articulated that local governments "may be sued for constitutional deprivations visited pursuant to government 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id*. at 694. Notably, Congress included the term "custom" in 28 U.S.C. § 1983 "because of the persistent and widespread discriminatory practices of state officials. . .Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id*. at 691 (quoting *Aidekes v. H.S. Cress & Co*., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

Thus, a litigant seeking to impose liability on a municipality under § 1983 must prove that such a custom or policy caused the constitutional violation at issue in order to obtain a judgment against a municipality. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir.2003). To sustain a Section 1983 claim against a municipality, "at the very least, there must be an affirmative link between the policy [or custom] and the particular violation alleged." *Tuttle*, 471 U.S. at 823.

Further, "when a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality. . .a city [can] be liable for such a failure to under Section 1983." *City of Canton*, 489 U.S. at 388. To prevail on such a Section 1983 a claim under a theory of failure to train or supervise, a plaintiff must introduce evidence of "other incidents" because a policy or custom of a

11

"deliberate indifference" to constitutional rights generally cannot be established solely by reference to a single incident in question. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1998)

Plaintiff alleges that Defendant City acted with deliberate indifference when it established inadequate policies, procedures, and customs relating to the conduct of its detectives in using force against individuals in custody. (Compl. ¶¶ 44–48.) Plaintiff further alleges that Defendant City failed to properly train its police officers. (*Id.* ¶ 52.) None of the facts within the record before the Court, however, support the inference that the City of Trenton has such policies or customs. The only argument proffered by Plaintiff is the conclusory allegation that "it is evidently the custom and practice of the City of Trenton to condone violent assaults of free citizens under their control because [the officers] were not disciplined by the City of Trenton." (Opp'n Br. at 9.) Additionally, Plaintiff makes the assertion that he has "adduced plenty of evidence in the record to create a genuine issue of material fact regarding the training of the officers and their deliberate indifference to learning and applying proper restraint techniques." (*Id.*) Plaintiff cites to his expert's deposition testimony whereby he indicates the following:

> [T]he application of force by all the individuals, to me, showed that they either had little training or have a misunderstanding of tactical training when it applies to use of force in the actual tactical technique involved in force.

(Plf's SMF ¶ 38.) Nothing within the record, however, demonstrates that inadequate training or supervision is a *custom or policy* of Defendant City. Further, Plaintiff fails to provide any evidence of "other incidents" to demonstrate Defendant City's policy of inadequate training.

Accordingly, no genuine issue of fact remains as to whether Defendant City is liable under a municipal or *Monell* liability theory. Summary Judgment will therefore be granted as to Counts Two and Three.

**D.     WHETHER PLAINTIFF'S NEW JERSEY STATE CLAIMS SHOULD BE DISMISSED (COUNT FOUR)**

The Court will consider Plaintiff's N.J.S.A. 10:6-2 claims as analogous to his § 1983 claims. *See Pettit v. New Jersey*, Civ. No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011). Accordingly, under Count Four, the Court will grant summary judgment as to Defendant Police Department and deny summary judgment as to the remaining defendants for the reasons set forth in §§ B and C, *infra*.

**IV.     CONCLUSION**

For the reasons stated above, the Court will DENY Summary Judgment on Counts One and Four as to Defendants Parrey Jr., Mejia, Cincilla, Donaire, and Defendant City. The Court will GRANT Summary Judgment on Counts One and Four as to Defendant Police Department. The Court will GRANT Summary Judgment on Counts Two and Three. Counts Two and Three will be DISMISSED WITH PREJUDICE. An appropriate order will follow.

Date: **January 31, 2023**

                                                s/ Zahid N. Quraishi
                                                **ZAHID N. QURAISHI**
                                                **UNITED STATES DISTRICT JUDGE**